UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RONNELL L. TERRY,

      Defendant.

_____ /

Case No. 22-20385

F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RETURN OF PROPERTY (ECF No. 37) AND MOTION FOR STATUS UPDATE (ECF No. 45)**

**I.    INTRODUCTION**

On August 22, 2023, Defendant Ronnell Terry was sentenced to five years in prison after having pled guilty to one count of possessing 40 grams or more of fentanyl with intent to distribute. (ECF No. 33). In March 2025, he petitioned the Court for the return of property seized during the DEA's investigation. (ECF No. 37). He specifically seeks the return of a necklace with a pendant, a Rolex watch, and an iPhone. (*Id*. at 189). The court ordered the government to respond to his motion. (ECF No. 38). The government did so, explaining that the necklace and watch had already been administratively forfeited. (ECF No. 39, PageID.192–93). The court then ordered supplemental

1

briefing, requesting that the parties address the applicability of 18 U.S.C. § 983(e) and whether the DEA's notices that were mailed to Terry's home address while he was incarcerated affected his ability to file a timely claim. (ECF No. 40, PageID.205–208).  The parties filed their supplemental briefs (ECF Nos. 41, 43) and Defendant filed a reply (ECF No. 44).  Additionally, Defendant filed a motion for an update regarding the status of his initial motion.  (ECF No. 45).

## II.    FACTUAL BACKGROUND

On April 25, 2022, Terry set off in his car on I-69 with a baggie containing about 47 grams of fentanyl that he intended on distributing to others.  (ECF No. 25, PageID.68).  As he drove, the state police pulled him over on the highway for a traffic violation.  *Id*.  Terry hid the baggie of Fentanyl in his pants.  *Id*.  Because he had an arrest warrant, the state police arrested him and sat him in the front seat of the patrol car.  *Id*.  Terry then hid the baggie of Fentanyl under the glove box in the patrol car.  *Id*.

Later that same day, the state police took Terry to the county jail where he was booked.  (ECF No. 43-2, DEA Report).  DEA agents arrived on scene. *Id*. During the booking process, a baggie containing multiple yellow pills fell out of his pant leg.  *Id*.  And law enforcement officers removed both the necklace

with a pendant and a Rolex watch from Terry's person. *Id*. During his Mirandized interview, DEA agents informed Terry that he was under investigation for drug distribution and had been so for a while. *Id*. When asked how he earned money, he laughed and did not provide an answer. *Id*. Agents then asked Terry how he could afford to buy the necklace and watch. *Id*. He claimed that his girlfriend gifted them to him. *Id*. DEA agents sealed both the necklace and watch in evidence bags in front of Terry and gave him the opportunity to sign the bags as their "owner/possessor" before agents took them. *Id*. Terry refused to sign, declaring that "I'm never going to get them back anyway." *Id*. From a confidential source, DEA had learned that Terry bought the necklace with drug proceeds for tens of thousands of dollars. *Id*.

In October 2022, Terry made his initial appearance. (ECF Nos. 7, 9). The Indictment contained a forfeiture provision that notified him of the government's intention to seek "forfeiture of all proceeds, direct or indirect, or property traceable thereto" . . . of the violations set forth in the Indictment. (ECF No. 1, PageID.2). He pled guilty to possessing 40 grams or more of fentanyl with intent to distribute in April 2023. (ECF Nos. 23, 25). As the government points out, he did not then file a claim for return of the necklace

3

or watch.  The court sentenced him in August 2023.  (ECF No. 33).  Again, the government points out that Terry did not then file a claim for return of the necklace or watch.

On April 4, 2024, DEA sent a written notice of seizure for the necklace and watch by first class mail to Terry at his home address (Colonial Drive). (ECF No. 43-3, Affidavit, pgs. 3, 7).  Four days later, a person signed the signature block accepting service of the notice.  *Id*.  The notice contained a deadline to file a timely claim: May 9, 2024.  *Id*.  On May 23, 2024, DEA received an undated claim purportedly from Terry for the necklace and watch, with a return address of Colonial Drive in Flint.  *Id*. at 4, 8.  On July 10, 2024, DEA sent a letter by certified mail to the Colonial Drive address acknowledging receipt of the claim, stating it was untimely, and giving Terry 28 days from the date of the letter to file a valid petition for remission or mitigation.  *Id*. at 4, 8.  Terry did not reside at the Colonial Drive address because he was in the custody of the Bureau of Prisons.  On August 7, 2024, after there had not been any timely and properly executed claim received, the DEA forfeited the watch.  *Id*. at 5.  Similarly, they forfeited the necklace on October 10, 2024, after the time limit for filing a claim expired and no properly executed claim had been received.  *Id*. at 9.  Terry brings this motion for return

of property, arguing that he was not given sufficient notice such that he could file a timely claim.

## III.   ANALYSIS

The central issue raised by this motion whether the DEA's administrative forfeiture should be set aside under the court's authority under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106–185, 114 Stat. 202, codified in part at 18 U.S.C. § 983.  After the DEA concludes an administrative proceeding with a final order of forfeiture, under CAFRA, the exclusive remedy for seeking to set aside that declaration of forfeiture in court is a motion under 18 U.S.C. § 983(e).  *Mikhaylov v. United States*, 29 F. Supp. 3d 260, 263 (E.D.N.Y. 2014) (citing 18 U.S.C. § 983(e)(5)).

Title 18 U.S.C. § 983(e) provides, in relevant part, that:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—
>    (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>    (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

*Id*. § 983(e)(1).  If the moving party satisfies *both* elements of § 983(e)(1), then "the declaration will be set aside to the interest of the moving party without prejudice to the right of the Government to commence a subsequent [forfeiture] proceeding."  *Bermudez v. City of New York Police Dep't*, No. 07 CIV. 9537 (HB), 2008 WL 3397919, *4 (S.D.N.Y. Aug. 11, 2008) (citation omitted).

Here, Terry argues, essentially, that it was not reasonable for the DEA to serve the notice of forfeiture on his home address when he was actually in the custody of the Bureau of Prisons.  The government concedes that Terry was in the custody of the BOP at the time it served the notice of forfeiture at his home address, but does not primarily argue whether its efforts to notify Terry constitute "reasonable steps" within the meaning of § 983(e)(1)(A).  Instead, the government's argument focuses mainly on Terry's inability to satisfy § 983(e)(1)(B) because he had knowledge of the seizure, failed to file a timely claim despite that knowledge, and that this failure dooms his claim.  *See In re Sowell*, No. 08-51163, 2009 WL 799570, at *3 (E.D. Mich. Mar. 19, 2009) ("Even if the Government failed to take reasonable steps to provide notice, Claimant must also show that he did not have actual notice of the seizure in order to have the forfeiture set aside."); *Mosby v. United States*, No. 7:17-CV-

6

00253-BO, 2020 WL 6438396, at *7 (E.D.N.C. Nov. 2, 2020) ("[E]ven if the written notice of forfeiture was insufficient under *Dusenbery* [*v. United States*, 534 U.S. 161, 167 (2002)], because plaintiff was present when the currency was seized, plaintiff nevertheless fails to establish that he did not know or have reason to know of the seizure within sufficient time to file a claim, as required under 18 U.S.C. § 983(e)(1)(B)").  The government offers evidence, in the form of the DEA report, that Terry was present when the property was seized by the DEA.  (ECF No. 43-2).  Terry does not dispute this evidence nor offer any evidence to the contrary.  Indeed, he admits that "on April 25, 2022, Defendants necklace and Rolex watch was seized and removed from his body."  (ECF No. 44, PageId.286).  There is also no dispute that Terry did not file a timely claim.

Here, the evidence shows that Terry was aware that the DEA seized the property at the time of seizure.  Under the plain language of § 983(e)(1)(B), Terry's claim is barred because he had knowledge of the seizure within sufficient time to file a timely claim.  Even without knowledge that the seized property would be forfeited, where Terry "knew that the DEA took the [property]" such knowledge "enabled him to make a claim before the

7

agency." *Mikhaylov*, 29 F.Supp.3d at 270; *see also Eleidy v. United States*, No. 5:22-CT-3365-BO, 2023 WL 8284369, at *4 (E.D.N.C. Nov. 30, 2023) (Plaintiff cannot establish the second element required by § 983(e)(1), where he had actual knowledge of the seizure because he was present when the property was seized.); *CNEST Oregon Sols., LLC v. United States*, 96 F. Supp. 3d 726, 735 (S.D. Ohio 2015) ("Section 983(e)(1)(B) plainly states that it is knowledge of the **seizure,** and not of the forfeiture proceedings, that bars a claimant from relief under the statute if he fails to file a timely claim.") (emphasis in original); *In re Sowell*, at *3 (The language of the statue requires the moving party to have knowledge of the seizure, not the forfeiture action itself.); *Harrington v. DEA,* No. 05–CV–206–WOB, 2006 WL 897221, *4 (E.D. Ky. Apr. 6, 2006) (holding the requirements of § 983(e)(1)(B) are not met where "the DEA had seized the money from his pocket").

There is no dispute that Terry was aware of and present for the seizure of his property in April 2022 by the DEA.  As explained in the DEA report, Terry was given the opportunity to sign the evidence bags identifying the property as his, but he declined to do so.  (ECF No. 43-2).  He even stated that he knew he was "never going to get them back anyway." *Id*.  Thus, Terry knew of the seizure and failed to file a timely claim.  Accordingly, he has not satisfied

8

§ 983(e)(1)(B).  Because he has not satisfied the second requirement of § 983(e)(1), the court need not decide whether the first requirement has been met.  Under these circumstances, Defendant's motion must be denied.[1]

## IV.    CONCLUSION

For the reasons set forth above, the court **DENIES** Defendant's motion for return of property (ECF No. 37) and **DENIES** the motion for status update as moot (ECF No. 45).

**SO ORDERED**.

Date: June 10, 2026                          s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge

---

[1] The government indicates that it still possesses three phones seized during its investigation, including the iPhone mentioned in Terry's motion for return of property.  (ECF No. 39, PageID.192-93).  The government has no objection to returning the three phones provided Terry designates a person to take custody of them on his behalf.  *Id.* at PageID.193.  Terry has 21 days from entry of this Order to designate a person to take custody of the phones, should he wish to pursue that option.